Gilbert Bettman, Attorney General, Earl R. Hoover, Assistant Attorney General, Columbus, and Williams, Sohngen, Fitton & Pierce, Hamilton, for defendants.

## WEST v TRUSTEES OF MIAMI UNIVERSITY et

Ohio Appeals, 1st Dist, Butler Co

Decided December 1, 1931

ROSS, PJ.

The burden of proving the existence of illegality in the act of the University in suspending the plaintiff rests squarely upon the plaintiff.

It is admitted by the plaintiff that the School of Education or Normal School is a part of the Miami University, a state supported institution, and that such University is governed by a Board of Trustees. The government of the University is provided for in §7939 GC.

The term "government" incorporates a trinity of functions:—The enactment of laws, rules, and regulations; the judicial construction of same as applicable to their suggested violation; and,' their execution. This term "government" is broad enough in its scope, as applied to a university or college, or school, to include administrative rules and regulations affecting scholastic procedure as well as disciplinary measures affecting only moral conduct or order.

There is nothing in the pleadings, stipulation, or record to indicate that the rules and regulations involved were not approved by the Board of Trustees, in whom rested the power of government of the university and school.

No appeal was taken by the plaintiff to the trustees. Until the contrary appears, it may be taken for granted that the faculty acted in conformity with the dictates of the board of trustees, and in conformity with the powers given such faculty by the Charter hereinafter noted. The continued existence of the rules and regulations as to scholastic standards, coupled with their enforcement from time to time supports such conclusion.

The statute creating Miami University is 7 **Ohio Laws** (§§1, 5, 8, and 15).

Obviously such rules and regulations are subject to the limitation that they must be reasonable and not arbitrarily applied, and shall not conflict with the laws of the state or United States. Otherwise, they are binding upon all concerned.

The contention of the plaintiff is, that the University and School being established and supported by the State are open to all its citizens, who have the rights to continue as students therein as long as their conduct shall not offend against reasonable rules, requiring order, decency, and decorum.

This contention is at once answered by the statute law of this state. In addition to the pertinent statute already noted, the following statutes are germane:

**Sec 7897 GC**, provides for the creation and establishment of the Normal School at Miami University.

**Sec 7658 GC**, provides that the holder of a diploma from a first grade high school shall be admitted without examination to any state supported college or university, but concludes with:

"This Section shall not be construed to deny the right of. a college of law, medicine, or other specialized education to require college training for admission; nor the right of a department of music or other art to require particular preliminary training or talent."

**Sec 7659 GC**, specifically sets forth the entrance requirements for institutions for the preparation of elementary teachers, but concludes with the following:

"The right of normal schools and colleges to require additional tests of general ability and scholarship for entrance to teachers' courses shall not be abridged."

A "university" is defined by the Oxford English Dictionary to be:

"The whole body of teachers and scholars engaged, at a particular place, in giving and receiving instruction in the higher branches

of learning; such persons associated together as a society or corporate body, with a definite organization and acknowledged powers and privileges (esp. that of conferring degrees), and forming an institution for the promotion of education in the higher and more important branches of learning; * * *."

Education is manifestly progressive, ability to properly approach a study of the higher branches, being necessarily predicated upon proficiency in the subjects leading up to them.

The wisdom of the statutory entrance requirements is, therefore, obvious. But it is contended, that having once passed such requirements a student, though thereafter in the opinion of the governing body showing evidence of inability to progress with the normal student, must be permitted to continue unmolested as long as such student may desire. There are many reasons why such procedure would be harmful both to the student, the institution, and the student-body—one of which is, that the higher branches of education are presented to the average student who is presumed to have reached an appropriate stage of maturity in mental development.

With no reflection upon any student it may become apparent upon entering into the work of a college or normal school that such normal stage has not been reached. A few months absence from the institution, permitting both natural maturing of the mental faculties as well as independent study in such supporting subjects as may be necessary, cannot help but be a benefit to the individual. On the other hand, it would not be reasonable to require that the progress of the great body of students, possessing average intellectual development, be retarded pending the acquisition by the individual student of the necessary proficiency to proceed.

There has been no showing that the scholastic standing set by the governing body of the University and School are not such as to be easily met by the average student.

It is clear that the faculty, consisting of the teaching body of the institution, must be the tribunal, under the direction and controlling jurisdiction of the Trustees, to pass upon the fitness of the students to continue their study of the courses selected or required.

It is contended that the Constitution of 1802 contains provisions sustaining the position of the plaintiff. Even if this were true, these provisions do not appear in the subsequent Constitutions of the State, and the position of the plaintiff is untenable in the face of the acts of the Legislature hereinbefore noted.

Nothing has been shown requiring us to find that the rules and regulations in question are unreasonable.

Some stress has been laid upon the fact that the student was suspended in mid-term Such a procedure might cause unnecessary embarrassment upon the part of a student, and such fact seems to be recognized in the rules of the University which contemplate appropriate action at the close of a semester.

It is to be noted, however, that the University in the instant case, at the request of the student, permitted an extended period of probation under terms in which she at least acquiesced, and which she did not fulfill.

The institution should not be penalized for leniency in the application of its rules, or for a result, a mid-term suspension, which would not have occurred had not such leniency been extended. It is to be noted further that the student was notified of her final suspension when she was still at her home, and during a **mid-term vacation.** Even the harshness of the situation thus created by her failure to meet the terms of the probation was ameliorated. The unnecessary harshness of a mid-term suspension can easily be appreciated and is generally depreciated, although within the power of the governing body of the University. Where, however, such mid-term suspension becomes a condition to which the student may or may not subject himself, even such criticism is removed.

Nothing appears in any controlling case contrary to that which has been said.

The injunction ought not to have been granted, and is dissolved.

We find the issues in favor of the defendants, and a decree may be taken accordingly.

HAMILTON and CUSHING, JJ, concur.